Good morning, Your Honor. My name is Young Lim. I represent the appellant, First Intercontinental Bank. I want to start out with the standard of review. The question of choice of law is definitely de novo standard. The issue is going to be whether the facts supporting the decision is a de novo standard or abuse of discretion standard. In this case, the factual findings by the judge, whether that's going to be a de novo standard or a higher standard, it is our position, the appellant's position, that it should be a de novo standard. The reason it should be a de novo standard is because there's no disputed facts in this case. The facts are that of the declaration of Christina Ahn, which was attached to the motion for summary judgment, which is Appellant Record 84. And in the declaration of Christina Ahn, she makes the following declaration and the following facts, which are undisputed. Why did you sue her in the first place when apparently she had been excused from the loan? The underlying lawsuit was that there was an oral modification. However, under loan documents and under Georgia law, you have to have in a note situation, it has to be in writing. And the question is, since there was no written board minutes, there was no written modification of the loan documents, that we had a right to go forward. Judge Clauston ruled in the motion for summary judgment that we waived that written provision based upon the acts and based upon the fact that Christina Ahn relied upon the oral representation by surrendering her interest in the underlying borrower, which she had a certain amount of interest. So that's why you want de novo review of the facts? Correct, because there was no finding in the motion for summary judgment as to whether Christina Ahn signed the agreement or whether she did not. In fact, in appellate's record three and four, which is the judge's decision in regards to the issue of attorney's fees, the court found that Christina Ahn made the following statement of intent to amend the complaint to bring in the allegation that she did not sign the agreement. And the motion for summary judgment made these arguments stating that she did not sign the documents. Judge Clauston found that to be, did not allow attorney's fees on that category. And your honor, I apologize. Can I save five minutes for rebuttal? And so you keep track of your own time. As you can see from what happened before, we expect you to keep track of your own time. And if we're asking questions, then you keep going, but otherwise, it's like an hourglass and the sand is slowly trickling down. It's trickling down very quickly. So, um, and therefore the only facts that we have are the undisputed facts of Christina Ahn, and therefore that should be done on a de novo standard. And the declaration of Christina Ahn, which is again, appellate records 84 states as follows. I was not present at the time the loan documents were purportedly executed in March, 2009. At the time the loan documents were purportedly executed in March, 2009, I was not aware that I was named as a signatory. I did not sign the loan documents and the signature on each and every one of the loan document is not my signature. I did not authorize anyone to sign the loan document on my behalf. Those are paragraph two through five of the declaration of Christina Ahn except for the appellate. She changed her position. The bank changed its position, right? Well, agreed. However, the reason for that, your honor, is because the judge Klausner in her, his decision makes the following fact, which we believe is, is the de novo standard and what this case is all about and the finding that he makes. I appreciate you've argued, well, I'll let you answer the question. Thank you, your honor. And I'm looking at appellate record number six, which is the decision of Judge Klausner in regards to attorney's fees. And there it says that it is undisputed the note was negotiated and executed in California and Georgia. However, there's no facts at all to support. As a matter of fact, the evidence is complete to the contra that there was nothing that was negotiated or signed in California. The only respondent, the only party to this is Christina Ahn. And she's saying she didn't sign it. She wasn't aware of it. She didn't negotiate it. She had no idea. Therefore, this statement and the reason. Do you concede that the place of negotiation was both in California and Georgia? I cannot concede that based upon the declaration of Christina Ahn. Okay. So do you concede the place of contracting? Where do you say that was? Georgia only? Yes. Okay. So what about the place of performance? The place of performance is in Georgia and in Louisiana because the proceeds for the loan was to renovate a hotel, a comfort inn in Louisiana. No place of business or any of that money was coming to California or was being used in California commerce. And the domicile of the persons involved on would have been California, the corporation signing the contract, Colorado? Georgia, Your Honor. FIB's in Georgia? Correct. What about the contract itself? The contract says Georgia. That's correct. So therefore, then going back to the obviously we have two differing decisions between Berglas and Grove, which is interesting because the plaintiff in both cases were the same plaintiff, ABF Capital. And our fact pattern is similar to Berglas instead of Grove. Grove is a somewhat convoluted fact pattern dealing with assumption of liability and personal liability, and there it was clear, clear that the contract was entered into in New York and California, and the performance took place in California. Therefore, those were the two biggest factors that were used. What's interesting is that Berglas specifically stated that, and I'm reading, Your Honor, from. . . I kind of understand Berglas. What I'm kind of worried about is under this contract, it seems like the district court found that your client released on from her obligations and then sued her what I consider a technical theory, that it didn't mean to do what its board of directors had voted to do. So then I said to myself, Why wouldn't that make California's interests more important than any other? Protecting its residents from having California courts used against her and now going to go someplace else, FIB protected its claims, and why not protect on her claims? And I think that's a very interesting question, and that is because what happened is if we look at. . . Well, it's not interesting. It comes to me to be very essential. I mean, on one hand, you got what you wanted. It seems to me California's interests become much more important when you got what you wanted, and now you're after her, and now you don't want her to have the chance to be protected under California law. First, there's a very strong public policy, and it's set forth in Ed Lloyd, which decided the whole choice of law provision, and the way 187 and 188 is written, that the arms link, whatever was negotiated, whatever the contract said, should take great preference. So number one, the contract says that Georgia law shall apply. For there to be a choice of law contra to what was stated in the contract, they have to meet four specific factors, and it's an and, it's not an or. And I understand that maybe under your honor's concern that the section number, the four, section number three, California has a materially greater interest than Georgia in determining the particular issue may in this incident be in favor to Christina Ahn. However . . . You've got to get there. You've got to get there. And Berglas says we don't get there. But let's back up. What about the fundamental policy? This seems not in dispute. 1717 embodied a fundamental policy of California. You said in district court it was a fundamental policy. So it seems to me if I get to the issue of fundamental policy, California's interest is higher. Again, as you pointed out, your honor, you have to get to that section. So all I'm trying to do is work through. You seem to be focusing on the first question, but I'm just trying to get to the last two questions first and then go back to the original question. But the thing is, and that's why I started this oral argument, by saying that you have to meet all four factors. You have to meet all four factors. So if you don't meet 187 and those factors, just like Berglas, Berglas made a specific point of saying that since they don't meet these factors under 187, we don't need to get into who has a greater interest. And that's why I read that portion of Berglas. Well, I understand what you read. Frankly, I see Berglas and Grove Properties, and I'm trying to understand why they don't apply, how I can apply them both. But that's why I wanted to go down through this. It seems to me that really if I'm going to look at Ned Lloyd, the three requirements that I've got to find is, one, California would consider the factors of 188 in applying its own law. The application of the Georgia law would be contrary. And lastly, there's a materially greater interest. So now I'm back to the factors of 188. Now, I saw what you went through and said what the factors of 188 are, and then I saw what the district court said the factors were. Are you saying that your case rides on the fact that this finding the factors is a question of law which I can make my own determination for and should give no deference to the district court? Because the district court did not come out where you did. District court said negotiated and executed in both California and Georgia. District court almost said, I thought he said, you conceded that the negotiation was California and Georgia. Only on place of performance did the district court really suggest that the payments were due in Georgia. So, I mean, if I look at the facts the district court found, it seems to me that you don't win on the 188 factors. And that's why, Your Honor, I started out with the standard of review. That's why you're trying to get me to suggest that in finding the facts on which I am to apply the law, I am not to give the district court any deference. That's correct, because there are no disputed facts in this case. Actually, counsel, with respect, following up on my brother's comment here, I'm looking at SER 2 and SER 15. And in the motion for summary judgment in the breach of contract action, the bank acknowledged that, and I quote, Christina Ahn made, executed, and delivered the contract to plaintiff. And on page 25, the same thing. You submit a documentation bearing her signature and suggesting that the contract had been executed in California. So I know you're saying that it's de novo review, but we can certainly take those matters into consideration, right? Your own filings? And again, Your Honor, I hope I reserve my five minutes because these are questions. But we're asking you questions, so we may give you some time. So go ahead and answer the question. Thank you, Your Honor. Those were allegations that were made. These are your claims. These are our claims based upon what records we have. They were not allowed to amend their complaint to assert that Christina Ahn did not sign that agreement. The first time that became an issue was when the new counsel came in and they made an attempt to amend the complaint. And so that's the first time we became aware of it. But answer Judge Smith's question. That's the problem. What we have in the record from your side is not what Christina Ahn is saying in her declaration. The declaration was not admitted. And now you're saying even on de novo review I'm to ignore what you alleged and go with what she suggested. And that's even on de novo review. Well, the declaration of Christina Ahn was admitted to the record. It is appellate record. It's in my record. I appreciate that. Agreed. It's not what the district court was making its determination on. Well, the district court did make that determination a subsequent order when it awarded the attorney's fees and cut down the attorney's fees and said that the whole motion to amend and the motion for summary judgment where she asserted that she didn't sign the agreement was and acknowledged that that was the allegation that was made by Christina Ahn. And going back to your question, Your Honor. Let me suggest this. We'll let you come back and have a brief period to respond in rebuttal. But just something to think about. It seems to me that you really got a taming of the shrew issue. And at one point you say it's the sun. The next point you say it's the moon. And the question is, from my perspective, isn't the bank bound by its pleading? So just keep that in mind when you come back for your rebuttal. Thank you, Your Honor. Let's hear from Ms. Ahn's counsel. Good morning, Your Honors. May it please the Court. Natalie Clossie for Christina Ahn. Your Honors, this case involves exactly the kind of situation that Section 1717 was intended to address. As you acknowledged, Ms. Ahn had been released from the note in 2010. She had been released from the note. Despite that release, they chose to sue her in California court. And the court found on summary judgment for Ms. Ahn, and found specifically that she had executed the note but that she had been released from it. Now, that order was never appealed. There was no timely appeal of the summary judgment order. The only appeal was taken from the attorney's fees order. And there are several cases, and we've cited to them, and if you need me to, I can cite them to you again, that provide that a summary judgment order, or a final order, needs to be appealed separate from the attorney's fees decision that may occur later on in the court. So that summary judgment, yes? I have a question about, there's a dispute in the briefs about, you say that this case could have been filed elsewhere, and they chose to file it in California, isn't that right? Yes. And the bank is saying we could only file in California. Yes, Your Honor. So what's your response to what they say? My response is that they did choose to avail themselves of a California forum. They had to. Your Honor, I don't agree respectfully. They could have included in the contract, in the loan documents, they could have included a choice of venue clause. They also could have filed in Georgia and requested that Ms. Ahn take notice, or I'm sorry, not take notice, but consent to the venue. And more specifically, Your Honor, they really had no reason to sue her. So they chose to sue a California resident on basically a frivolous claim. Could they have sued, and this was a question I'm glad my colleague asked it, could they have sued her in Georgia because she did business in Georgia? Your Honor, I'm not actually aware of the facts of whether she did business in Georgia. Well, if I'm going to go down place of contracting and place of negotiation, and I'm going to go the way the district court did, did she not contract in Georgia, California? She contracted in California, yes, Your Honor. Okay. Thank you. And, Your Honors, I'd like to address, going back to the issue that counsel for the bank has raised, in terms of the issue of the standard, the standard here is not de novo, respectfully. The court, again, they found, they rendered a decision on summary judgment that was final. That decision that she had executed a contract, that is final. Not only that, but they should be judicially stopped because they, in the court below, did assert the position that she executed the contract. It's final because they didn't appeal it. They did not appeal the summary judgment order. Right. And they prevailed in the lower court on asserting that she executed the contract, but the court found that she was released. So they are judicially stopped from now arguing that there should be de novo review of that issue. So what's sauce for the goose is sauce for the gander. Yes, Your Honor. In legal terms, of course. Yes. Sure. It must be a good Oregon. It's an Oregon statement. Ducks, right? That's why I was going, but it was ducks in Oregon. Not geese. Not geese. Go ahead. Thank you, Your Honors. When you affirm the district court, do we open the door for other litigants to use California courts to get out of contract provisions that they agreed to and expected, you know, honored? I think that as a California resident, Ms. Ahn, that the California legislature passed 1717, looking to protect its citizens, and it made 1717 a non-waivable statutory right. And so – That goes to fundamental policy, but I think your opposition makes a good point when he responded to my two questions about fundamental policy and materially greater interest and said, you've got to get there, brother. And so I appreciate you saying 1717 says what it does, it's the way it is, but really you've got to get through the other choice of law provisions to get there, don't you? Yes, Your Honors. And Judge Klausner did go through each provision. And the way that the choice of law issue is usually set forth is actually to look at whether there – it looks at first, and Judge – Justice Smith had a decision, bridge fund versus fast bucks, that went through the same analysis. Just one point. There is no justice on the Ninth Circuit. Oh, excuse me. You can take that any way you want. Thank you, Your Honor. So basically the first point in the analysis is usually first, is the chosen law, does it have a substantial relationship to the parties or the transaction? And I don't think anybody here disputes that because there is a Georgia bank here, that is sufficient to meet that first prong. Counsel, help me with this. As I get your point now, you say whatever may have been the situation before the summary judgment and the decision that there was in fact a contract from which she had been released, things may have been in flux, but the court made a decision there, made a determination there was a contract that she did sign it, that it was signed here. So a lot of the things that were perhaps even contrary to previous declarations are really of no moment now because the summary judgment was awarded, there was no appeal from that, so that is in effect the law of the case. Yes, Your Honor.  Yes, Your Honor. So when we analyze this, whatever happened before is of little moment. What we're dealing with is they, for whatever reason, they chose to file in California, so that was their choice. You have a contract that, according to the summary judgment and the bank's own statement, was executed here, carried out to a large degree here and the like, and basically at least three of the four factors are in favor of your client. Is that correct? Yes, Your Honor. What do you do with Telco? Telco was passed, I'm sorry, it was decided before. There's two points on Telco. First, it was decided before the California Supreme Court set forth the choice of law analysis in Ned Lloyd's. Secondly, Telco was also a case that arose in, I believe it was the Northern District of Illinois. Is that correct? That's correct. And basically it was removed to federal court and then it was transferred to the Northern District of California. And the rule there is that the court that now has the case before it is to apply the law of the transfer of court, and that includes choice of law analysis. And so we really think that Telco is not applicable here at all. Because it didn't take into account the California Supreme Court's change? Well, it didn't have. The Supreme Court didn't exist, of course. Exactly. It was transferred to California, right? That's correct. So then the result would have been the same if originally filed in California as just DICTA? Yes, Your Honors. I understand that to be your argument, but I didn't know you really said that prior, so I just wanted to make sure. Yes, we believe it's DICTA. Because the result would have been the same if it had been filed in California would be pretty heavy on this case. Yes, and again, the court there did not have the benefit of the Ned Lloyd analysis. I believe that case was from 1980 and Ned Lloyd was in 1992. Correct. So, Your Honors, we feel that the district court properly applied the choice of law analysis and properly concluded that California did have a fundamental policy that created a materially greater interest in having its law applied here. Can I ask you about that, Counsel? Sure. There is certainly at least one California Court of Appeal decision that suggests that from early on. Is there anything definitive from the California Supreme Court about 1717 being a fundamental policy of the state of California? I don't believe that there is, Your Honor. The only one I know of is the ABF case, which is a Court of Appeal case. Yes, it's a Court of Appeal case. There's also a central district case called Ribbons that has also found that it's fundamental. And that court specifically looked at the language of the statute, which states that it's a non-waivable right, that any contracts made to avoid that right are void. And so, therefore, the court said that it's mandatory, that you cannot contract around it. Grove Properties also said that, didn't it? Yes, Your Honor. That's the ABF case. Oh, sorry. No, that's okay. I always call it Grove Properties. I understand why you do. Yes. Because they're both ABF, otherwise. Correct. All right. So, Your Honors, basically, our position is that the court correctly decided that. They correctly applied the choice of law analysis and the policy behind 1717 to protect California citizens from unfair lawsuits or pressure to settle because of the fact that they don't have access to attorney's fees. We believe that that all weighs in favor of upholding the district court's position. How much of a role, if any, does your view, certainly Judge Klausner's view, that the bank was kind of a bad actor in going after her after the release, how much of a role does that play in the 1717 analysis? Well, theoretically, it shouldn't necessarily play any role. But here, the facts are just great for us because I do believe that they were bad actors, that they tried to take advantage of the situation and tried to force her to basically give them more money, even though they had released her. And my point about that is just simply that if California citizens are being beaten up from the big perspective and 1717 was designed to kind of equalize or level the playing field for consumers, that kind of plays into that, doesn't it? Yes, Your Honor. Exactly. Do you have any more questions? No. Okay. I don't think we have any other questions. Thank you, Counsel. Counsel, we're going to give you two minutes of rebuttal time, even though the hourglass has long since run out, but we want you to have a full opportunity to make your argument here. Thank you, Your Honor. Going back to your original question as to what the finding of the court was, in regards to the summary judgment, there was no finding that Christina Ahn signed and negotiated the contract in California. I'm not suggesting that the court found it. I'm saying you're pleading to allege that. However, the pleading was supported by a declaration of Mr. – and the separate statement was supported by a declaration of Mr. Kwon, the bank officer, and looking at his declaration, there's nowhere in that declaration that says that Christina Ahn signed and negotiated the contract in California. So you alleged more than you had? Well, allegations are, as the court is fully aware, allegations in itself are not evidence. I understand that. Nor is it a – and I don't believe in this case a judicial estoppel because we did not prevail on that claim. It would only be a judicial estoppel if we took a certain position and then we prevailed on it. However, we did not prevail on that claim. That's an interesting concept. You're saying that if somebody alleges A and it turns out to be false, that you cannot be stopped based on that falsehood? What I'm saying is that we need to look at the evidence, not the allegations. And the evidence – Part of the evidence is an allegation. What do we do with that? What I pled or alleged in the motion for the opposition to the summary judgment are not facts. It was the undisputed statement – But you had contended they were. That was an undisputed fact that we put in support of by a declaration, but the declaration doesn't support that. And I don't think that creates – the only reason we're discussing this is in regards to whether the factual issues are to be reviewed on a de novo standard. You have a – That's my colleagues. The hourglass has again run down. Do either of my colleagues have questions of this gentleman? No. We appreciate – we know that we could talk about this for some period of time, but our practice is to go by our basic time limits. So we thank – Thank you, Your Honor. Your arguments have been very helpful. The court now stands adjourned and we will withdraw.
judges: Lefkow, Smith, Smith